Good afternoon, Your Honors. My name is Richard Farkas, F-A-R-K-A-S, appearing for appellate Imaging3, Inc. As the Court is aware, this is an appeal from the granting of a motion for summary judgment and accordingly entitled to de novo review. And we believe that there were a number of material factual issues that were raised before the district court. But the central question, as I understand it, is, is the arbitration award enforceable? That's essentially the sole issue before the Court because the only action brought by the petitioners was to confirm the Korean arbitration award. In that respect, Defendant Imaging3 had questioned and challenged both by way of letter to the Korean Arbitration Board and throughout the district court proceeding that the arbitration in Korea was simply invalid for a number of reasons. And in addition to that, we believe that Imaging3 had raised a number of the enumerated defenses to invalidate the arbitration award that had been made. Moreover, and I'll get to it in greater detail, Your Honor, but we feel that the evidentiary objections that were raised to the two declarants by the petitioner, those evidentiary objections should not have been overruled outright. Finally and critically, we think that the Korean Arbitration Board had completely disregarded the issue of the fact that And in that regard, as I'll get to in greater detail, I think it's critical to note that the declaration of Dean James indicated that paragraph 8.6 of the original contract that he testified that he signed, and that's testimony that was supported by Declarant Christopher Son, provided that the validity, performance, and interpretation of this agreement shall be governed and construed under the laws of the State of California. Now, the petitioner brings its entire action based on an invoice, essentially a sales contract by Medicine Econet a year later, providing for a Korean arbitration. But I think it's critical, despite the credibility issues of which contract, which of the contracts was actually executed, neither of those contracts, the one that Dean James said he signed, or the one that was presented as an exhibit, Exhibit A, I believe, to the summary judgment motion, provided for jurisdiction in Korea and no mention whatsoever was made to Korean arbitration or enforcement of Korean law or to arbitration at all. Now, in that regard, as I indicated earlier, Medicine really presented no percipient witnesses. These were co-receivers for Medicine Company, and I don't know what their relationship might have been to Medicine Econet, again, a separate and distinct entity. And in that regard, I just want to point out that Medicine Econet was not a party to the Korean arbitration. It was not a party to the district court action. It's a separate entity, and the only contract upon which petitioner relied was a contract allegedly between my client and Medicine Econet. But Medicine Econet wasn't a party to the Korean arbitration, and it wasn't a party to the district court action. Once again, I think I noted that we had objected to the declarations overall that were submitted in conjunction with the petition. And Dean James, as well as the evidentiary objections, basically said that these individuals were never dealt with. They weren't part of the company, either company, at the time of the contracting or at the time of any of the economic relationships. They were receivers who came in after the fact that had no percipient knowledge whatsoever. Yet these declarations were overruled outright. Turning back again to the evidence that was presented in support of the summary adjudication, summary judgment motion, rather, even the November 1, 2000 agreement that was presented by petitioner made no reference to Korean law. Paragraph 8.6 of that agreement provided for governing law but made no mention of Korea. And again, nowhere in that contract was there any mention of arbitration. The only mention that was ever made of arbitration or of Korean law, again, was a sales contract, which was a separate entity, admittedly a separate entity, albeit had been formed apparently later after the contract was signed. But again, Econet was not a party to the arbitration, and it wasn't a party to the district court action. Dean James and Christopher Sine indicated that they never dealt with Medicine Econet. To the contrary, both of them indicated that they specifically thought they were dealing with the domestic entity. And Dean James referenced in his declaration that he thought he was dealing with the domestic medicine and made reference to Medicine USA, the website, as part of his declaration. And again, the contract that he said he signed and the contract that was relied upon by the petitioner, neither of those documents provided for arbitration or for application of Korean law. Finally, stepping to a different issue is the cross-complaint, the counterclaims that were made by Imaging 3 were wholly disregarded by the district court. And granting its summary judgment essentially said that the issues raised in the counterclaim of Imaging 3 related to the same circumstances and transactions and therefore could have been adjudicated in Korea, notwithstanding the fact that we never dealt with Medicine Econet. And accordingly, the district court, we believe erroneously, declined to even give consideration to any of the cross-complaint allegations that were being asserted by Imaging 3. Essentially, all of the contract claims which had been raised by Imaging 3, including the contractual agreement to resolve disputes between the parties in the California forum, were simply disregarded. What degree are the claims and what you want to put forward here in the district court as counterclaims? I'm sorry. To what degree are the counterclaims that you wish to assert covering the same subject or issues that were addressed in the arbitration? Well, first and foremost... In other words, I'm asking you, in order to win on those counterclaims, do you have to get somebody to disagree with what the arbitration panel decided? Well, those findings would have been contrary to what the Korean arbitration board decided because it essentially said, well, there's a contract here, and I believe the language as translated basically said, we see no evidence of those counterclaims sufficient to overcome the claims of Medicine. Now, if that's so, why are you not then faced with not claim preclusion but issue preclusion arising out of the decision of the arbitration panel? Well, at the very threshold level is the fact that the Korean arbitration board, we believe, didn't have jurisdiction to deal with those issues. But nevertheless, Imaging 3 in raising those counterclaims was raising issues as to the defective nature of the equipment, the mislabeling of the equipment, the failure of Medicine to cure the problems with the equipment. And all of those arise under the contract that Imaging 3 had with Medicine, not with Medicine Econet. So even if, by way of example only, that we were to give some credence to the contractual findings made by the Korean arbitration board, I think still Imaging 3 should have and should have had the opportunity to assert its counterclaims with respect to the damages it incurred. But let me ask you this just to make sure I understand your legal position. Assuming for the moment, and I'm not asking you fully to concede, but assuming for the moment that the Korean arbitration panel has jurisdiction over this dispute, that it was properly sent to them, assume that. Assume that the arbitration panel then decides what it decides. To what degree do your counterclaims require a contrary factual determination from what the arbitration panel decided? I believe, and of course we don't concede the validity of that Korean finding. However, I believe that those claims that Imaging 3 was making could still be asserted against what we think is a separate and distinct contracting entity. And we've got damage claims that never were even considered by the Korean arbitration board and that we should be able to assert. I'm not sure you directly answered my question. Let me get mad at it a different way. You claim there are two entities in Korea. What did the arbitration panel decide as to that question? I believe the arbitration board simply accepted what Manison had said, which was, at least what they said in the district court, was that at the time the contract was signed, they were one and the same entity. In other words, I think you lost on that issue in front of the arbitration board. The arbitration board did find that they were one and the same entity, and therefore... So you're making an argument that on that argument, I mean, you lost that in Korea. And you've got other arguments as to why the arbitration board didn't have jurisdiction, and I understand those. But assuming that the arbitration panel or arbitration board properly had the case, I think it decided that issue against you. Wrong? It did, and I believe it then simply said we see no evidence of the other claims that were being set forth by Imaging 3, which we think exists separate and apart from that. I have to say my problem with your counterclaims is not claim preclusion. Claim preclusion typically is I brought a claim, I lost a claim, or I brought a claim and it didn't include some other claims, and now I want to bring some more claims. Typically it doesn't go to counterclaims that somebody else might have asserted. But preclusion is, of course, also issue preclusion, and it seems to me that the arbitration panel or arbitration board has decided the questions that you're seeking to raise by counterclaim. Well, it did, Your Honor, and we disagree with that. I understand you disagree, but I think they decided them. The decision seemed to simply say we find no evidence sufficient to overcome the claims that were being asserted by Medicine there. We believe our contracts were with a separate entity and should be allowed to be asserted at the district court level, particularly since Medicine Econet, which led to the action being adjudicated in Korea, was not even a party to the district court action. We couldn't even bring those claims under those sorts of circumstances. Finally, Your Honor, I did indicate that notwithstanding the finding of the Korean Arbitration Board, we believe that Imaging 3 has raised at least sufficient to overcome summary judgment. Some of the enumerated defenses that were available to it, among those I indicated in the brief, were Imaging 3's incapacity and, of course, the issue that I've already discussed, that the award was made beyond the scope of the arbitration since the contract was signed with this different entity and in light of Dean Jane's and Chris Son's testimony that they signed a California provision in their contract. And then thirdly, the defense that defining the Korean Arbitration Board was not in accordance with the agreement between the parties. And on that, Your Honor, I submit, reserving whatever questions you might have. You've got some time for rebuttal if you like it. Thank you, Your Honor. Good afternoon. My name is Mark Faulkner. I am attorney for the respondents in this case. In his argument, Mr. Farkas admitted that the central issue in this case is whether or not the arbitration award issued by the Korean Commercial Arbitration Board should be confirmed. And we looked to the New York Convention for the elements that need to be shown in order for that award to be confirmed. The New York Convention also provides a list of possible defenses which would operate to prohibit or preclude the confirmation of the award. Mr. Farkas attempted to argue that a November 2000 contract was the one that was dispositive in this case. Yet in discovery, his president admitted that he signed the October 2001 sales contract, which contained the arbitration provision, that his signature on it was authentic  In the briefing, Imaging 3 attempted to argue that a catastrophic fire destroyed all their records and they were prohibited by that circumstance from presenting admissible evidence otherwise. But their own admission in discovery showed that the contract which the petitioners in this case or the plaintiffs in this case, the respondents here, argued was the basis for confirmation of the arbitration award was a contract to which Imaging 3 was a party. Mr. Farkas has also acknowledged before this Court that the Korean Commercial Arbitration Board found that there was a single entity involved because Medicine Econonet Co. Limited was an unincorporated division of Medicine Co. Limited at the time that the October 26, 2001 contract was executed. Imaging 3 had no controverting evidence on that subject either before the KCAB or before the U.S. District Court here. And so to the extent their argument is based on the contention that there was no arbitration agreement between the parties, that is factually incorrect. The first test under the New York Convention is whether or not there was a contract between the parties providing for arbitration, and the October 26, 2001 sales contract is that contract in this case. The second test under the New York Convention is whether or not the dispute that is an issue between the parties is something that fell within the arbitration clause of the applicable contract. And in this case, it clearly did because that language from the October 2001 sales contract provided that all disputes, controversies, or differences which may arise out of or in relation to or in connection with this contract are to be submitted to arbitration before the KCAB. The petitioner has not particularly argued, at least not specifically either, that the dispute between the parties was not the subject of the or did not fall within the scope of the arbitration clause. And before the District Court, the defendants did not adduce any competent evidence to support their contention that it was not within that scope. The third test under the New York Convention is that asks whether the arbitration award is binding. And in this case, in discovery as indicated in the papers, Imaging 3 never did anything other than the assertions it made at the District Court level in response to the complaint to challenge the KCAB award. The New York Convention offers, as I mentioned a few minutes ago, a handful of affirmative defenses which can be the basis for denying confirmation. And although Imaging 3 adverted to them, it did not before the District Court proffer any admissible evidence as sufficient to support any of these things. The first available defense is that the parties lacked capacity to enter into the agreement. And in response to that from Imaging 3, we've heard the remarks about economet. And we've shown in the papers and before the District Court that that is a false argument. The second possible defense under the New York Convention is that the party sought to be bound by the confirmation of the arbitration award did not have proper notice of the arbitration proceeding. In this case, Imaging 3 participated in written form with the KCAB. And although it did assert jurisdictional objections, the KCAB found against Imaging 3 on those points. The third possible defense of the New York Convention is that the arbitration award deals with a difference that was not contemplated by the party's arbitration agreement. In this case, it very clearly did. The fourth possible defense is that the arbitral authority was not as the parties had agreed. In this case, it very clearly was. It was the Korean Commercial Arbitration Board, which the October 26, 2001 sales contract referred to. And it is that board which made the decision in this case. The next defense is that the petitioner could have raised but failed to do so with any competent evidence, was that the KCAB award was not binding. It's undisputed in this case and before the District Court that the Korean arbitration award was binding. The next possible defense that they might have asserted was that the arbitration was incompetent to resolve the matter. In this case, on the originally the plaintiff's side, the dispute was a matter of nonpayment. The defendant argued that the goods were not in conformity with the contract. They weren't what they expected. But the Korean Arbitration Board did not find any evidence to support those contentions of defecting the goods. And so the Korean Arbitration Board's award was a relatively simple one that awarded the monetary payment sought by the medicine receivers. And it disposed of the contentions of Imaging 3 by saying that there was no evidence found to support them. Finally, and the last available defense under the New York Convention is that to confirm the arbitration award would be contrary to public policy. In this case, that defense is clearly unavailable because with the United States and Korea being parties to this international treaty regarding for arbitral awards and their confirmation, a decision consistent with that international treaty is obviously consistent with the public policy. In regards to the question whether the Korean Arbitration Award disposed of the claims which Imaging 3 has raised in purported defense and counterclaim before the district court, if the court looks at the record before it, it will see that the submission which Imaging 3 made to the KCAB is virtually word-for-word identical to the contentions asserted by Imaging 3. And so for them to argue that these are different issues that were not presented before the KCAB is not consistent with the evidence here. A last point which the petitioner raises on appeal was the issue of whether the Korean Arbitration Award disposed of the claims which Imaging 3 had raised. The argument that the district court should have granted a continuance to Imaging 3 for the purposes of adducing additional evidence relevant to material issues of fact in the case. There are three tests that must be met in order for a continuance to be supported, and in this situation, Imaging 3 did not meet any of them. The first requirement they should have met was to establish what facts likely would have been available as to material issues if they had been granted the continuance. There was no argument made with respect to what those facts would be other than general references to documents in the possession of the FDA. The second of the three tests regarding the propriety of granting a continuance requires that the party seeking the continuance has to provide specific reasons why that evidence is not currently available. The petitioner has made arguments throughout and consistently that this catastrophic fire deprived it of these documents, but if you look closely at the chronology of the events, it is clear that this catastrophic fire took place many, several years, perhaps four years before the district court proceeding, about two years before the KCAB proceeding, and in their request for a continuance, there was no discussion whatsoever of what efforts Imaging 3 had made to obtain those documents from parties other than itself. There's no mention that they made any effort to go to the FDA to get those documents or to the customs authorities, which they refer to in another portion of their argument, and that failure to explain what effort they have made is the third test which has to be met in order to support the granting of a continuance, and that is there has to be an explanation of what effort the defendant has made already or what effort it would make in the future to obtain the documents which it contends support the granting of the continuance. Imaging 3 glossed over all of that by this general and recurrent reference to this catastrophic fire, but never made any attempt to obtain the documents which it contends support the granting of the continuance. Thank you very much. Response? Just very briefly, Your Honors. I don't think any reference was made by Mr. Faulkner of the evidentiary objections that we had raised, which are critical, because again, the evidence that was presented at the district court was by and through to declarants who had no percipient knowledge of the facts, which is contrary to the evidence that was presented at the district court. And the evidence that was presented by Dean Jaynes and by Christopher Son, which essentially is undisputed, and that's the fact that the November 1, 2000 contract, which was the subject of the arbitration filing, and it was the subject, Exhibit A, to the district court filing, made no mention of Korea law and no mention of arbitration. And similarly, the only document upon which the district court or the Korean board could rely upon was tantamount to the fact that the court had no prior knowledge of the facts. And that's tantamount to what seems to be a sales invoice made after the fact. And then finally, on this Econet issue, it was the subject of discovery, and it was in the separate statement at page 622 of the excerpt of record, where in several statements, Imaging 3 had asserted that Medicine Econet is a separate and distinct entity from Medicine Company Limited, and those were, in fact, 32 through 35. And that fact is conceded, although there's an issue as to the formation date after that entity was formed, if, in fact, it was a contracting party that had a right to rely upon this sales invoice, that it could have and should have been a party to the district court action. And upon that, I would submit on the paper. Thank you very much.
judges: Noonan, Fletcher, Gould